FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 20, 2023

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MELISSA R.,<br><br>   Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>   Defendant. | No. 2:21-CV-00305-JAG<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 15. Attorney Maren Miller Bam represents Melissa R. (Plaintiff); Special Assistant United States Attorney Joseph J. Langkamer represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge by operation of Local Magistrate Judge Rule (LMJR) 2(b)(2) as no party returned a Declination of Consent Form to the Clerk's Office by the established deadline. ECF No. 17. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

I.    JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on December 2, 2019, alleging amended onset of

ORDER GRANTING DEFENDANT'S MOTION - 1

disability since March 1, 2019. Tr. 15, 97, 232-46. The applications were denied initially and upon reconsideration. Tr. 132-39, 147-52. Administrative Law Judge (ALJ) Jesse K. Shumway held a hearing on April 8, 2021, Tr. 38-65, and issued an unfavorable decision on April 29, 2021. Tr. 12-37. Plaintiff requested review by the Appeals Council, and on September 16, 2021, the Appeals Council denied the request for review. Tr. 1-6. The ALJ's April 2021 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 21, 2021. ECF No. 1.

## II. STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings and the ALJ's decision and only briefly summarized here. Plaintiff was born in 1981 and was 36 years old on the alleged disability onset date. Tr. 31. She has a GED and reports she completed some college courses. Tr. 71. Previous employment includes work as a receptionist. Tr. 31, 299.

## III. STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one

rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## IV. SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work and (2) the claimant can perform other work that exists in significant numbers in the national economy. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V. ADMINISTRATIVE FINDINGS

On April 29, 2021, the ALJ issued a decision finding Plaintiff was not disabled, as defined in the Social Security Act. Tr. 12-37.

At **step one**, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024, and that she did not engaged in substantial gainful activity (SGA) since March 1, 2019.  Tr. 17.

At **step two**, the ALJ determined Plaintiff had the following severe impairments: major depressive disorder, anxiety disorder, somatic symptom disorder, personality disorder, right shoulder impingement, degenerative disc disease of the lumbar spine, and left eye blindness.  Tr. 18.

At **step three**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 18-19.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light work, but with the following limitations:

> [Plaintiff] can only occasionally climb ladders, ropes and scaffolds; she can occasionally stoop, kneel, crouch, and crawl, and frequently climb ramps and stairs; she can occasionally reach with the right upper extremity; she cannot do work tasks requiring precise depth perception, like threading a needle or using dangerous tools or machinery; she cannot have concentrated exposure to extreme cold, humidity, vibration, or pulmonary irritants; she can have no exposure to hazards, such as unprotected heights and moving mechanical parts; she is limited to simple, routine tasks and well-learned detailed tasks; she can have no contact with the public; and she is limited to a routine, predictable work environment with no more than occasional changes.

Tr. 22.

At **step four**, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 31.

At **step five**, the ALJ found that, based on the testimony of the vocational expert and considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the

national economy that Plaintiff could perform, including the representative occupations of router, office helper, and photocopying machine operator. Tr. 31-32.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision.  Tr. 33.

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and Title XVI of the Social Security Act.  The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff raises the following issues for review: (1) whether the ALJ properly evaluated the medical opinion evidence; and (2) whether the ALJ properly evaluated Plaintiff's subjective complaints.  ECF No. 13 at 1.

## VII.   DISCUSSION

A.   **Medical Opinions.**

For claims filed on or after March 27, 2017, pursuant to the applicable regulations, the ALJ does not give any specific evidentiary weight to medical opinions or prior administrative medical findings.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program).  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  Supportability

and consistency are the most important factors, and the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may explain how the ALJ considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.* Supportability and consistency are explained in the regulations:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The Ninth Circuit addressed the issue of whether the new regulatory framework displaces the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* at 788-89, 792. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 790,

792. Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id*. at 792.

    1.    *Dr. Jackline.*

Plaintiff alleges the ALJ erred by not properly evaluating the opinion of William H. Jackline, Ed.D. ECF No. 13 at 10-18. On April 6, 2018, Dr. Jackline conducted a psychological evaluation and rendered an opinion on Plaintiff's level of functioning. Tr. 367-76. Dr. Jackline diagnosed Plaintiff with somatic symptom disorder, persistent, severe, with predominant pain; major depressive episode, single episode, moderate; unspecified anxiety disorder; and unspecified personality disorder. Tr. 373-74. Dr. Jackline opined that in a work setting Plaintiff would show a "mildly to, at times, significantly impaired ability to understand, to remember and to follow simple directions." Tr. 374. He explained "[t]he latter would occur when [Plaintiff] experienced times of her reported severe pain." *Id*. He opined she would also show a "moderately to, at times, significantly impaired ability to understand, to remember and to follow increasingly lengthy, fast-paced and complex verbal information and directions," which would occur when Plaintiff "experienced times of her reported severe pain." *Id*. He further opined she would show a "moderately to, at times, significantly impaired ability to sustain her concentration and to persist at a task," noting again this would occur "when [Plaintiff] experienced times of her reported severe pain." *Id*. He further opined Plaintiff would show significantly impaired social interactive skills, and a "moderately to, at times, significantly impaired ability to quickly, independently and appropriately adapt to changes within her environment, and to appropriately respond to daily stressors," which "again . . . would occur when [Plaintiff] experienced times of her reported severe pain." *Id*. The ALJ found Dr. Jackline's opinion unpersuasive. Tr. 28.

ORDER GRANTING DEFENDANT'S MOTION - 7

1    Plaintiff contends the RFC determination is the product of legal error because the ALJ rejected the opinion from Dr. Jackline without setting forth reasons supported by substantial evidence. ECF. No. 13 at 10-18. Defendant contends the ALJ reasonably found Dr. Jackline's opinion unpersuasive because it lacked support and was inconsistent with the record. ECF No. 15 at 11-19.

The Court finds the ALJ did not err. The ALJ found Dr. Jackline's opinion unpersuasive because Dr. Jackline "gave broad ranges of levels of impairment, and tied supposed times of significant impairment entirely to speculative episodes of exacerbation of pain rather than to exam findings"; and because Dr. Jackline's opinion that Plaintiff had significant mental limitations was not supported by his own objective findings upon evaluation. Tr. 28. Supportability is one of the most important factors an ALJ must consider when determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion becomes. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

Here, the ALJ noted objective findings upon mental status exam included intact comprehension, cognition, memory, concentration, insight, judgment, and thought process, "aside from a bit of difficulty with social interaction as she presented with a low energy level, a dysthymic mood, a mildly blunted affect, and poor eye contact." Tr. 28. Although the ALJ does not provide citation to Dr. Jackline's findings in the discussion of opinion evidence, elsewhere in the decision the ALJ discusses Dr. Jackline's evaluation, including the objective findings upon mental status exam. Tr. 25 (citing Tr. 367-76; *see* Tr. 370-71).[1] The ALJ noted

---

[1] While the ALJ cited to the exhibits in the decision, the Court cites here to the corresponding pages in the Administrative Record.

ORDER GRANTING DEFENDANT'S MOTION - 8

Dr. Jackline's report that there were a "few times during the evaluation when she showed mild, mirthful responses in the form of a brief smile," and that although she maintained poor eye contact and was not verbally spontaneous, she was also not irritable or belligerent, and she responded to all interview questions. Tr. 25. The ALJ noted Plaintiff was able to recount events that had occurred in her life, and she completed memory tasks, although Plaintiff reported she often had to write things down when Dr. Jackline asked how she typically remembered and followed multiple step verbal directions. *Id*. The ALJ noted Plaintiff was able to complete spelling tasks forward and backward, and a "simple three-step command successfully though slowly." *Id*. The ALJ noted Plaintiff's complaints at the consultative exam "consisted mainly of her medical conditions and the pain she experiences on a daily basis, which cause[d] her to be depressed," but the ALJ also noted Dr. Jackline's report that she was "not currently involved with a comprehensive pain management program." *Id*. The ALJ reasonably discounted Dr. Jackline's opinion because the limitations were not supported by Dr. Jackline's findings upon mental status exam.

The ALJ also found Dr. Jackline's opinion speculative. An ALJ may reject a medical opinion if it is conclusory, inadequately supported, or not supported by the record. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Additionally, "[t]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, Dr. Jackline opined that in a work setting Plaintiff would show "moderately to, at times, significantly impaired" abilities. Tr. 374. Dr. Jackline's finding of periods of limitations "at times" is not a concrete limitation, however, and Dr. Jackline also explained his opinion was based on Plaintiff's reports of "experienced times of her reported severe pain." *Id*. As discussed *supra*, the ALJ reasonably found Dr

ORDER GRANTING DEFENDANT'S MOTION - 9

Jackline's opinion was not supported by his mental status exam findings. The ALJ's conclusion Dr. Jackline's opinion was speculative because he gave broad ranges of level of impairment and based his opinion of periods of impairment on Plaintiff's reports rather than exam findings is supported by substantial evidence. The ALJ was within his discretion to reject such statements from the provider.

The ALJ also concluded that along with objective findings, Plaintiff activities of daily living "demonstrate[d] her ability to adapt to daily life and to perform multi-step tasks on a daily basis" and "[did] not support the 'significant' mental limitations provided by Dr. Jackline." Tr. 28 (citing Tr. 367-76). An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02. Here, the ALJ noted during Dr. Jackline's evaluation Plaintiff reported she was able to perform activities such as taking care of her three children, cooking, cleaning, shopping, driving, and paying bills. Tr. 25 (citing Tr. 367-76), Tr. 28. The ALJ also noted her report that she completed personal grooming and hygiene tasks independently, and that she reported she went on Facebook and drove herself to the consultative examination; and Dr. Jackline noted she arrived 10 minutes early. Tr. 25 (citing Tr. 367-76). The ALJ reasonably found Dr. Jackline's opinion was not supported by Plaintiff's reports of her activities to Dr. Jackline at the evaluation.

Finally, the ALJ found Dr. Jackline's opinion was inconsistent with the longitudinal record. Tr. 28. Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ explained that Dr. Jackline's opinion was inconsistent with treatment notes showing Plaintiff's reports of "75-100 [percent] pain relief with medications" and the fact that she

"required minimal treatment for the past year." Tr. 28 (citing Tr. 406, 468-70, 478-80, 495-97, 504-06, 514-21, 524-26, 593, 607). Elsewhere in the decision, as discussed *infra*, the ALJ also discussed Plaintiff's reports of improvement with conservative treatment along with records indicating her symptoms were generally stable with treatment including medication. Tr. 26. The ALJ reasonably found Dr. Jackline's opinion was inconsistent with the longitudinal record.

Even if the medical opinion evidence could be interpreted more favorably to Plaintiff, if it is susceptible to more than one rational interpretation, the ALJ's ultimate conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court finds the ALJ's discussion of Dr. Jackline's opinion is supported by substantial evidence and Plaintiff is not entitled to remand on this issue.

B.   **Subjective Complaints.**

Plaintiff contends the ALJ erred by not properly assessing Plaintiff's symptom complaints. ECF No. 13 at 18-21.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives

'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

Here, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other

evidence in the record. Tr. 23. Plaintiff argues the ALJ failed to properly consider the nature and intensity of Plaintiff's limitations and failed to offer any reason for rejecting Plaintiff's subjective complaints. ECF No. 13 at 18-21. Defendant argues the ALJ reasonably discounted Plaintiff's subjective complaints because they conflicted with her work history, medical records, and activities. ECF No. 15 at 3-11.

      1.     *__Inconsistence with Objective Findings.__*

The ALJ determined Plaintiff's allegations were inconsistent with objective findings. Tr. 20, 23-26. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ noted at a physical consultative examination in 2018 the examiner noted left eye blindness since childhood, but that her corrected right eye vision was 20/40; the ALJ noted upon exam she was observed able to get around the room and handle objects such as coins, buttons, zippers, clothes and shoes without difficulty. Tr 24; *see* Tr. 377-84. The ALJ noted aside from reduced range of motion and painful bending in her lumbar spine, upon physical exam in 2018 she exhibited normal range of motion, muscle strength, sensation, and reflexes of her bilateral upper and lower extremities; and although she alleged multiple hypermobile and tender joints as well as difficulties with her shoulders and elbows, such difficulties were not observed during the exam. Tr. 24; *see* Tr.

379-80. She had normal gait and stride, was able to sit and stand without assistance, dress and undress, including removal of socks and shoes, and get on and off the exam table. Tr. 24; *see* Tr. 381. The ALJ noted an x-ray of Plaintiff's lumbar spine performed at the time of the 2018 exam showed normal alignment, normal bone density, and normal intervertebral disc spaces; L5-S1 neuroforaminal stenosis was noted but was mild. Tr. 24; *see* Tr. 382. The ALJ also noted an MRI in August 2018 showed mild degenerative disc changes and mild to moderate facet changes greatest in the lower lumbar spine without significant canal or foraminal stenosis; and the MRI was suggestive of minimal edema associated with a small central to right paracentral disc protrusion at L5-S1. Tr. 24 (citing Tr. 586).

The ALJ noted Plaintiff's reports that she injured her right shoulder in 2019; she reported intervening in a fight involving her son. Tr 24. The ALJ also noted that objective exams generally showed stiff neck, cervical extension causing pain corresponding to C3-5 bilaterally, lumbar extension causing pain at L3-5 bilaterally, reduced sensation in L4 and L5 bilaterally, tender points and muscle aches, and right shoulder pain, with otherwise intact cranial nerves, respiratory functioning, and ambulation without assistance. Tr 24; *see e.g.*, Tr. 465-553. An MRI of her right shoulder in February 2020 revealed mild impingement anatomy with tendinosis and partial thickness bursal sided tear in the posterior fibers of the distal supraspinatus tendon; and mild subacromial/subdeltoid bursitis. Tr. 24 (citing Tr. 396). AC bursa injection was recommended in March 2020 but was delayed due to COVID-19 restrictions. Tr. 412-13; *see* Tr. 470.

The ALJ also noted findings from the psychological consultative exam with Dr. Jackline in 2018. Tr. 25, 367-76. Dr. Jackline observed she was appropriately attired with good grooming, she presented with a low energy level, dysthymic mood, and mildly blunted affect, although she was observed to smile briefly a few times during the exam; and Dr. Jackline also observed she maintained poor eye

contact. Tr. 25, 370-71. Dr. Jackline observed Plaintiff was not verbally spontaneous, although he noted she replied to all interview questions and attempted all tasks from the mental status examination, and she was able to perform a simple, three-step command successfully though slowly. *Id*. The ALJ noted examinations in the record showed that she was oftentimes depressed, anxious, and/or tearful, but that on other occasions she demonstrated an appropriate mood and affect, was generally cooperative, spoke in a fluent clear and normal volume, had no perceptual or thought disturbances, and exhibited intact cognition, memory, concentration, attention, insight and judgement; the ALJ noted while at times she reported acute exacerbations in mental health symptoms in response to increased pain or psychosocial stressors, medication adjustment was discussed or prescribe at those times and she otherwise she reported stable symptoms on medication. Tr. 26 (citing Tr. 408, 475, 480, 521, 526, 563, 566-67, 570, 607-09, 623-24, 629-30).

      The ALJ's interpretation of the record is reasonable. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must also consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). On this record, the ALJ reasonably concluded that the objective medical evidence is not consistent with Plaintiff's complaints of disabling symptoms. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

### 2.  *Conservative Treatment/Improvement with Treatment.*

The ALJ found that Plaintiff's treatment did not support the level of impairment she alleged and that she improved with treatment. Tr. 23. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *See Tommasetti*, 533 F.3d at 1039 (holding the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset"). Additionally, the effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ noted Plaintiff reported that pain medicine, Tramadol, gave her 75 to 100 percent pain relief, and Plaintiff also reported improvement during the period at issue in her ability to perform household responsibilities and activities of daily living. Tr. 24 (citing Tr. 478, 495-97, 504-06, 514-21, 524-26). The ALJ noted Plaintiff was supposed to undergo an injection on her shoulder around March 2020, but that this was delayed due to COVID-19; the ALJ noted "still she reaffirmed that Tramadol was highly effective at relieving her pain. Tr. 24 (citing Tr. 406-08, 468-70). The ALJ also noted a letter from her physical therapist in April 2020 indicated that physical therapy for her right shoulder and low back pain in 2019 was helpful to Plaintiff until she unexpectedly stopped attending therapy. Tr. 24-25 (citing Tr. 593). The physical therapist noted at the time of her last visit in December 2019, she was able to walk into the clinic on her own and without the

use of any assistive device, "she was responding very well to resistance training exercises," and that she reported "not having to use the electric carts at the store anymore." Tr. 593. The ALJ noted in February 2021, Plaintiff reported she was engaging in physical therapy for her right shoulder and "making some progress." Tr. 25 (citing Tr. 607).

The ALJ reasonably concluded that Plaintiff's treatment did not support the level of impairment she alleged and that she improved with treatment. These findings are supported by substantial evidence and are clear and convincing reasons to discount Plaintiff's symptoms claims.

3.   *Activities.*

A Plaintiff's daily activities may support an adverse credibility finding if the activities contradict her other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). If a Plaintiff can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ pointed to Plaintiff's reports that she could maintain personal care, do household chores such as dusting, washing dishes, folding laundry, making meals, grocery shopping, driving, paying bills, watching television, going outside daily, caring for her children, and going on walks and hikes. Tr. 21-22, 26 (citing Tr. 291-98, 372-73, 377, 617, 638). The ALJ also noted Plaintiff's report in June 2019 that she switched jobs, becoming a "Paparazzi jewelry consultant." Tr.

22 (citing Tr. 566). The ALJ noted that in 2018 she reported she cooked for her children, shopped in stores once a week for groceries, paid bills, drove, and was able to perform personal grooming and hygiene independently; and she reported she went on Facebook a few times a day. Tr. 25 (citing Tr. 367-76); *see* Tr. 372-73.

On this record, the ALJ reasonably concluded Plaintiff's activities were inconsistent with her symptom claims. This finding, coupled with the additional reasons offered by the ALJ, was a clear and convincing reason to give less weight to Plaintiff's subjective complaints.

### 4. *Inconsistent Statements.*

The ALJ found Plaintiff's statements were not fully consistent with the medical record. Tr. 26. An ALJ may consider inconsistent statements by a claimant in assessing her subjective statements. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, the ALJ noted in June 2019 Plaintiff reported she had recently switched jobs to become a jewelry consultant and records show she reported she was pleased that her business was going well. Tr. 566. The ALJ also noted in February 2021 Plaintiff reported she wanted to get a job but that taking care of her family was her first priority. Tr. 26 (citing Tr. 607). While Plaintiff reported using an electric cart at the store, the ALJ noted in April 2020 Plaintiff's former physical therapist indicated that while she was attending physical therapy she "reported not having to use the electric carts at the grocery store anymore"; the ALJ also noted there was no evidence she required an assistive device. Tr. 25-26, 45, 593.

On this record, the ALJ reasonably concluded that some of Plaintiff's statements were not fully consistent with the medical record. This finding, coupled with the additional reasons offered by the ALJ, was a clear and convincing reason

to give less weight to Plaintiff's subjective complaints.  Plaintiff is not entitled to remand on these grounds.

## VIII.  CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error and is affirmed. Therefore, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED March 20, 2023.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE